UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CINDY JO ROBINSON,

                Plaintiff,        Civil Action No. 13-13124
                                       Honorable Thomas L. Ludington
                                       Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 16]**

Plaintiff Cindy Jo Robinson ("Robinson") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [11, 16] which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Robinson is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [16] be GRANTED, Robinson's Motion for Summary Judgment [11] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

On July 15, 2010, Robinson filed an application for SSI, alleging a disability onset date of March 6, 2009. (Tr. 86-91). This application was denied initially on October 20, 2010. (Tr. 40-43). Robinson filed a timely request for an administrative hearing, which was held on August 24, 2011, before ALJ Craig Petersen. (Tr. 305-45). Robinson, who was represented by attorney Daniel Pollard, testified at the hearing, as did vocational expert Jessica Christensen. (*Id.*). On September 21, 2011, the ALJ issued a written decision finding that Robinson is not disabled. (Tr. 26-34). On May 17, 2013, the Appeals Council denied review. (Tr. 4-8). Robinson filed for judicial review of the final decision on July 19, 2013. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled

2

>regardless of age, education, or work experience.
>
>Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C.   Background

#### 1.   Plaintiff's Reports and Testimony

At the time of the administrative hearing, Robinson was 41 years old. (Tr. 310). She was 5'4" tall and weighed 180 pounds. (Tr. 313). She reported living in a house with her husband (who received SSI), two sons, father-in-law (who also received SSI), and mother-in-law. (Tr. 124, 310-11). She completed the eleventh grade and later earned a GED but had no further education. (Tr. 113, 313). In the past, Robinson worked as a retail supervisor and a waitress; however, she had not worked since approximately 2006 because she "was having family problems" and it became "too hard" for her to stand on her feet all day. (Tr. 112-13, 314, 316). Robinson admitted, however, that no doctor ever told her to stop working. (Tr. 316).

Robinson alleges that she suffers from both physical and mental impairments, including neck and back pain, chronic obstructive pulmonary disease ("COPD"), hepatitis C, asthma, and bipolar disorder. (Tr. 112, 319-21). Her neck "cracks" and "grinds" a lot, and the pain – which

is generally a 7/10 on the pain scale – sometimes radiates down her left arm. (Tr. 322-23). She takes numerous medications for her conditions, including morphine and Vicodin, which make her drowsy. (Tr. 115, 320-22). As a result, she takes two or three naps per day. (Tr. 337). She testified that her mood disorder causes frequent mood swings, crying spells, and anxiety. (Tr. 324). Robinson indicated that she can lift and carry ten pounds, stand for 30-45 minutes (as long as she adjusts positions), walk for up to one hour at a time, and sit for 10-15 minutes. (Tr. 129, 324-25).

When asked to describe her daily activities, Robinson indicated that she has no problem with personal care and is able to do dishes, do laundry, prepare simple meals, do light housework (including sweeping and vacuuming), care for her children, and shop for groceries. (Tr. 125-27, 325, 328). She does not have a driver's license, because it was suspended – and she ultimately served jail time – for failing to pay tickets. (Tr. 127, 312). At the time of the hearing, Robinson was on probation after pleading guilty to a felony of carrying a weapon into a courthouse. (Tr. 334-35). She testified that she does not have any trouble with her memory. (Tr. 332). She is able to pay bills, count change, and handle a checking and savings account. (Tr. 127). Her hobbies include reading, watching television, and watching her children ride bikes, and she spends time with others on a regular basis. (Tr. 128). She has difficulty getting along with friends and family members because her moods change quickly and she has a "very short tolerance level." (Tr. 129). Robinson indicated that she has difficulty lifting, bending, standing, reaching, walking (sometimes), stair climbing, memory, completing tasks, concentration, following instructions, and getting along with others. (*Id.*). She does not always finish what she starts because she is easily frustrated, and she has difficulty following both written and spoken instructions because she does not like "someone telling [her] what [she] must do." (Tr. 129-30).

She quit her last job because she could not get along with her bosses and coworkers, and she does not handle stress or changes in routine well. (Tr. 130).[1]

### 2. *Medical Evidence*

The Court has thoroughly reviewed Robinson's medical record. In lieu of summarizing Robinson's medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. *The ALJ's Findings*

Following the five-step sequential analysis, the ALJ found that Robinson is not disabled under the Act. At Step One, the ALJ found that Robinson has not engaged in substantial gainful activity since July 15, 2010, the application date. (Tr. 28). At Step Two, the ALJ found that Robinson has the severe impairments of bipolar disorder, degenerative disc disease of the lumbar and cervical spines, COPD, asthma, and hepatitis C. (*Id.*). At Step Three, the ALJ found that her impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 28-30).

The ALJ then assessed Robinson's residual functional capacity ("RFC"), concluding that she is capable of performing light work, except that she can lift and carry up to 20 pounds occasionally and 10 pounds frequently, and with the following additional limitations: she can push and pull up to 10 pounds occasionally; stand and walk up to six hours of an eight-hour workday; sit up to six hours of an eight-hour workday with normal breaks; occasionally climb stairs and ramps (but no climbing of ropes, ladders, or scaffolds); and occasionally stoop, kneel, crouch, and crawl. (Tr. 30-32). However, she cannot perform tasks requiring repetitive bending and twisting of the neck or at waist level; she cannot perform overhead work or repetitive lifting

---

[1] In a third party function report dated July 19, 2010, Robinson's sister, Patricia Burdanowicz, generally corroborated Robinson's statements. (Tr. 135-42).

5

from ground to floor level to waist height; and she cannot tolerate concentrated exposure to heat, humidity, cold, gases, or fumes. (*Id.*). Moreover, her work must be limited to simple, routine, and repetitive tasks and free of fast-paced production requirements; can involve no more than simple work-related decisions with few, if any, workplace changes; and can involve only occasional interaction with supervisors, coworkers, and the public. (*Id.*).

At Step Four, the ALJ determined that Robinson is unable to perform her past relevant work. (Tr. 33). At Step Five, the ALJ concluded, based in part on vocational expert ("VE") testimony, that Robinson is capable of performing the light jobs of garment sorter (150,000 jobs in the national economy), checker I (120,000 jobs), and assembler of small products (110,000 jobs). (Tr. 33-34). As a result, the ALJ concluded that Robinson is not disabled under the Act. (Tr. 34).

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**E.     Analysis**

    *1.     Waiver*

It is difficult to discern Robinson's specific arguments in support of her motion for summary judgment. Her motion consists almost entirely of a compilation of quotations of black

letter case law, with little accompanying analysis or application of that law to the facts of her case. Robinson does assert (in a heading in her brief) that the ALJ erred in "assessing [her] credibility and by failing to properly evaluate the medical records of evidence and, thereby, forming an inaccurate hypothetical that did not accurately portray [her] impairments." (Doc. #11 at 6). But, Robinson does not explain with any particularity whatsoever which medical records the ALJ purportedly "fail[ed] to properly evaluate." (*Id.*).

In response to Robinson's motion, the Commissioner argues that Robinson has waived any challenge to the ALJ's assessment of the medical opinion evidence because she has not made any substantive claims of error regarding those aspects of the ALJ's decision.[2] (Doc. #16 at 13). Indeed, Robinson's brief is very similar to one her counsel filed in another matter, *Burger v. Comm'r of Soc. Sec.*, 2013 WL 2285375 (E.D. Mich. May 23, 2013), which the court found to present no non-waived issue. And, on March 24, 2014, Chief Judge Rosen issued a scathing commentary on Robinson's counsel's approach to his clients' summary judgment briefs:

> … [T]his reliance on conclusory assertions and absence of developed argument has become the calling card of Plaintiff's counsel in a number of recent Social Security cases, and nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel. In light of this lamentable record of filing one-size-fits-all briefs and inviting the Judges of this District to formulate arguments and search the record on his clients' behalf, Plaintiff's counsel is strongly cautioned that this Court will carefully examine his submissions in future suits to ensure that they advance properly supported arguments that rest upon (and cite to) the facts of a particular case. Failure to adhere to these standards will result in the imposition of sanctions and possible referral of counsel for disciplinary proceedings.

---

[2] Robinson provides the Court with nearly three pages of black letter law regarding the treating physician rule, but does not actually argue that the rule was violated here. (Doc. #11 at 12-14). Her failure to even make – let alone fully develop – an argument regarding application of the treating physician rule constitutes a waiver of any argument she might otherwise have had on this issue. *See Terrell v. Comm'r of Soc. Sec.*, 2013 WL 5178541, at *9 (E.D. Mich. Sept. 10, 2013) ("[P]laintiff cannot simply make the claim that the ALJ committed an error, while leaving it to the Court to scour the record to support this claim.").

8

*Fielder v. Comm'r of Soc. Sec.*, 2014 WL 1207865, at *1, n. 1 (E.D. Mich. Mar. 24, 2014) (internal citations omitted). While Robinson's opening brief in the instant case was filed prior to issuance of the *Fielder* opinion, the Court notes that it is yet another "one-size-fits-all" brief, containing the very same "conclusory allegations" and "absence of developed argument" that Chief Judge Rosen found wholly insufficient in *Fielder*. Here, then, the Court could find that Robinson has waived her arguments regarding the ALJ's assessment of the medical opinion evidence. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted). Nonetheless, for the sake of completeness, the Court will endeavor to address the arguments alluded to – however briefly – by Robinson.

        *2.     Credibility*

Robinson challenges the ALJ's credibility determination, asserting that his conclusion that she was not entirely credible was "clearly in error" because "her testimony regarding her severe medical impairments is backed up by medical documentation." (Doc. #11 at 12). In making this assertion, Robinson ignores the reasons articulated by the ALJ for discounting her credibility and fails to cite any medical evidence that the ALJ failed to properly consider. As set forth more fully below, the ALJ reasonably discounted Robinson's allegations of disabling limitations because they were inconsistent with the objective medical evidence, the opinions of the consulting and reviewing physicians and her daily activities. (Tr. 30-32).

As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. &*

*Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of her symptoms are credible. *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. §416.929.

Here, the ALJ thoroughly discussed the objective medical evidence regarding Robinson's impairments. With respect to Robinson's mental impairments, she asserts in her motion only that she has been diagnosed with bipolar disorder and exhibits symptoms of depression and anxiety. (Doc. #11 at 11-12). The ALJ acknowledged in his decision, however, that Robinson received psychiatric treatment for these conditions at Westlund Guidance Clinic during the relevant period, including ongoing medicinal therapy and counseling. (Tr. 31, 207-19, 244-66). Westlund records reveal that Robinson was routinely cooperative, alert, and oriented, and she had no abnormal movements, fair memory, and fair attention and concentration. (*Id.*). Moreover, the record did not reveal any instance where Robinson was psychiatrically hospitalized, and in fact, she admitted that she had never been so hospitalized. (Tr. 221). In addition, state agency psychologist Joe DeLoach, Ph.D., reviewed the record and opined that Robinson has only mild restrictions in activities of daily living; moderate restrictions in

10

maintaining social functioning and concentration, persistence, or pace; and retains the capacity to perform simple and repetitive tasks on a sustained basis. (Tr. 31, 237, 241). The ALJ specifically accommodated Robinson's mental impairments by limiting her to simple, routine, repetitive work, free of fast-paced production requirements and involving no more than simple work-related decisions with few, if any, workplace changes and only occasional interaction with coworkers, supervisors, and the public. (Tr. 30). Robinson has not identified any additional mental limitations that she believes would be appropriate, and there is no indication in the record that additional restrictions are warranted.

With respect to Robinson's physical impairments, the ALJ noted that April 2008 x-rays of her cervical spine showed some evidence of muscle spasm, as well as modest disc interspace narrowing at C5-C6, but an otherwise normal appearance. (Tr. 31 (citing Tr. 185-86)). May 2010 cervical spine x-rays showed only mild degenerative disc disease and mild bilateral degenerative foraminal narrowing at C5-C6. (Tr. 206). The ALJ also noted that April 2008 lumbar spine x-rays showed modest levorotoscoliosis, but were otherwise negative. (*Id.*). Similarly, Robinson's May 2010 lumbar spine x-rays showed only mild degenerative disc disease and degenerative spondylosis at L4-L5. (Tr. 205). In addition, although a November 2007 CT of Robinson's right shoulder showed degenerative joint disease of the acomioclavicular joints, subsequent x-rays of her shoulders, performed in April 2008 and May 2010, were normal (Tr. 187, 188, 204).

Moreover, the consultative examiner, Siva Sankaran, M.D., reported that Robinson had normal shoulder range of motion, no sensory or motor deficit, normal deep tendon reflexes, normal cranial nerves, some tenderness of the neck and lumbar spine with muscle spasm present, negative straight-leg raising tests, and ambulation without the use of an assistive device. (Tr.

222). Dr. Sankaran reported that Robinson had cervical and lumbar degenerative disc disease "of mild degree." (Tr. 223). In addition, state agency reviewing physician Michael McManus, M.D., reviewed Robinson's records in October 2010 and opined that she could perform medium work despite her physical impairments. (Tr. 238-39).

In light of this objective medical evidence, the ALJ's RFC finding adequately accommodated Robinson's neck, back, and shoulder pain and resulting limitation. (Tr. 30). The ALJ concluded that she can perform a limited range of light work, but with no climbing of ropes, ladders, or scaffolds; occasional climbing of stairs and ramps; occasional stooping, kneeling, crouching, and crawling; no tasks requiring repetitive bending and twisting of the neck or at waist level; and no overhead work or repetitive lifting from ground to floor level to waist height. (Tr. 30-32). Robinson has offered no evidence justifying greater limitations than those the ALJ identified resulting from her neck, back, and/or shoulder pain.

In addition, the ALJ noted that Robinson's allegations of disabling limitations were not consistent with her reported daily activities. (Tr. 29-32). For example, the ALJ noted that Robinson was able to attend to personal care tasks, prepare simple meals, perform some household chores (including washing dishes, vacuuming, sweeping, and doing laundry), and generally care for her children. (Tr. 29, 125-27). Additionally, Robinson could pay bills, count change, and handle a checking and savings account. (Tr. 127). It was appropriate for the ALJ to consider these facts in assessing her credibility. *See* 20 C.F.R. §416.929(c)(3)(i) (an ALJ may consider a claimant's activities of daily living in evaluating credibility); *see also Walters*, 127 F.3d at 532 (an ALJ may consider household and social activities in evaluating the claimant's assertion of pain). The ALJ also reasonably discounted Robinson's credibility because of her sporadic work history and because of she is a former polysubstance abuser. (Tr. 32 (citing Tr.

12

102, 220)). Robinson does not challenge these grounds for the ALJ's credibility finding, and they were appropriate considerations. *See, e.g.,* 20 C.F.R. §416.929(a), (c)(3); *Soc. Sec. Rul.* 96-7p, 1996 WL 374186, at *5-6 (July 2, 1996); *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (appropriate for ALJ to consider poor work history when evaluating credibility).

In the face of all of this substantial evidence, Robinson relies primarily on own her testimony and her subjective complaints to physicians. (Doc. #11 at 10-12). However, even where there is "objective medical evidence of an underlying medical condition … an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r. of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). The only other evidence Robinson points to is the fact that her treating psychiatrist, Sunil Koneru, M.D., assigned her a Global Assessment of Functioning ("GAF")[3] score of 45. (Doc. #11 at 12). However, the ALJ expressly considered Dr. Koneru's opinion as to Robinson's GAF score and gave it "little weight" because a score of that magnitude reflects "serious symptoms such as suicidal ideation and [such symptoms are] not supported by the record as a whole" in this case. (Tr. 31). This assertion is consistent with Robinson's own report that she is not suicidal and has never been hospitalized for depression or anxiety. (Tr. 221). Moreover, Robinson has not argued that the ALJ's conclusion in this respect was improper, and it is supported by substantial evidence.[4]

In sum, while Robinson might disagree with the ALJ's credibility assessment, she has

---

[3] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

[4] Additionally, courts have recognized that GAF scores are not critical to a determination of an individual's RFC. *See White v. Comm'r of Soc. Sec.*, 2011 WL 5104622, at *3 (E.D. Mich. Oct. 27, 2011) (there is no statutory, regulatory, or other authority requiring the ALJ to "put stock" in a GAF score).

failed to articulate a basis for overturning that finding, particularly in light of the great weight and deference an ALJ's credibility finding is due on review. *See Kirk,* 667 F.2d at 538; *Smith*, 307 F.3d at 379 (ALJ's credibility determination will not be disturbed "absent compelling reason"). Here, where the ALJ gave a reasonable explanation for discounting Robinson's credibility, and that explanation is supported by substantial evidence, his credibility finding should not be disturbed.

### 3. Adequacy of the Hypothetical

Robinson also asserts in her brief that "for a response to a hypothetical question to constitute substantial evidence, each element of a hypothetical must accurately describe the Claimant." (Doc. #11 at 10 (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)). Then, however, Robinson simply states in conclusory fashion that "[b]ecause each element of the [ALJ's] hypothetical does not accurately describe [her] in all significant, relevant respects, the VE's testimony at the hearing should not constitute substantial evidence." (*Id.*). Although Robinson phrases this as a Step Five finding, the Court concludes that Robinson is attempting to refute the RFC finding via a purported Step Five error. *See Kirchner v. Colvin*, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").

In his decision, the ALJ thoroughly reviewed and discussed the record evidence, concluding that Robinson has the RFC to perform light work, except that she can lift and carry up to 20 pounds occasionally and 10 pounds frequently, and with the following additional limitations: she can push and pull up to 10 pounds occasionally; stand and walk up to six hours of an eight-hour workday; sit up to six hours of an eight-hour workday with normal breaks;

14

occasionally climb stairs and ramps (but no climbing of ropes, ladders, or scaffolds); and occasionally stoop, kneel, crouch, and crawl. (Tr. 30-32). However, she cannot perform tasks requiring repetitive bending and twisting of the neck or at waist level; she cannot perform overhead work or repetitive lifting from ground to floor level to waist height; and she cannot tolerate concentrated exposure to heat, humidity, cold, gases, or fumes. (*Id.*). Moreover, her work must be limited to simple, routine, and repetitive tasks and free of fast-paced production requirements; can involve no more than simple work-related decisions with few, if any, workplace changes; and can involve only occasional interaction with supervisors, coworkers, and the public. (*Id.*). In making this determination, the ALJ expressly considered the objective medical evidence, the opinions of the consulting examiner and the state agency reviewing physicians, and Robinson's daily activities, as detailed above.

Robinson appears to argue that the ALJ erred in failing to include in his hypothetical the fact that she would be off task 20% of the time or more and would miss three or more days per month of work, which she asserts would have been work preclusive. (Doc. #11 at 12). However, Robinson does not point to any evidence in the record even suggesting – let alone establishing – that she would be off task or absent from work that often. And, to the extent the medical records reflect that Robinson occasionally experiences some drowsiness (an issue Robinson does not specifically raise, and therefore should be deemed waived, *McPherson*, 125 F.3d at 995-96), substantial evidence supports the ALJ's accommodation of it in his RFC.

Dr. Sankaran noted that at his evaluation of Robinson, she appeared "drugged," and was "very sleepy and lethargic and drowsy." (Tr. 221). However, he attributed that to Robinson being "over medicated" on pain medication at the time of her examination, and noted that she was still able to respond to questions, and was "fully conscious and oriented." (Tr. 221-23).

15

While a few other records also make reference to Robinson being "somewhat sleepy" and "a little drowsy" during her appointments, those same records indicate that at each one she had either "good" or "fair" attention and concentration, with logical and/or goal-directed speech. (Tr. 211, 249). Moreover, one of those records attributed her drowsiness to Risperdal, which she was advised to discontinue, and the other attributed her drowsiness to the fact that "she and her husband exchanged [] medications," both of which issues should obviously not be ongoing concerns. (*Id.*). Another record attributed her fatigue that particular day to her "staying up during night [to handle] responsibilities in the home," and noted that Robinson agreed to sleep at night and handle her home responsibilities during the day. (Tr. 245). Again, this does not reflect an ongoing issue. Importantly, numerous other records indicate that Robinson was alert, engaged, and oriented during her appointments. (*E.g.,* Tr. 216, 217, 219, 244, 246, 253, 256, 260, 261, 263, 266, 268). And, Dr. DeLoach opined that she was capable of performing simple and repetitive tasks on a sustained basis. (Tr. 241). The foregoing constitutes substantial evidence supporting this aspect of the ALJ's decision.[5]

All told, no physician of record opined that Robinson's impairments would result in the limitations she alleges the ALJ improperly omitted. And, the ALJ recognized that Robinson had "moderate" difficulties with concentration, persistence or pace, which he reasonably accommodated by limiting her RFC to "simple, routine, and repetitive tasks and free of fast-paced production requirements. Her work can involve no more than simple work related decisions with few, if any, workplace changes.…" (Tr. 29-30). For all of these reasons, the ALJ was not required to include the work-preclusive limitations urged by Robinson in the

---

[5] It is worth reiterating here that the ALJ's decision must be affirmed as long as it is supported by substantial evidence, "even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286.

hypothetical question he posed to the VE. *See Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) (an ALJ is only required to pose those hypothetical limitations that he finds credible); *see also Cookman v. Comm'r of Soc. Sec.*, 2013 WL 6631463, at *9 (E.D. Mich. Dec. 17, 2013) (same). As such, Robinson's argument that the ALJ formed an inaccurate hypothetical lacks merit.

### III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Robinson's Motion for Summary Judgment **[11]** be **DENIED**, the Commissioner's Motion **[16]** be **GRANTED**, and this case be **AFFIRMED**.

Dated: July 31, 2014                                          s/David R. Grand
Ann Arbor, Michigan                                        DAVID R. GRAND
                                                                           United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

   The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 31, 2014.

               s/Eddrey O. Butts
               EDDREY O. BUTTS
               Case Manager